UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.

Gabrielle Micheletti,

    Plaintiff

v.

Pininfarina of America Corp

    Defendant

## COMPLAINT

Plaintiff, Gabrielle Micheletti ("Plaintiff"), sues the Defendant, Pininfarina of America Corp., and alleges as follows:

## NATURE OF ACTION

1. This action arises out of Plaintiff's employment relationship with Defendant, including her discrimination, harassment, and retaliation in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.; the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq*. ("FCRA"); and, Florida common law.

## PARTIES

2. At all times material, Plaintiff was a resident of Miami-Dade County, Florida.

3. From 2017 until approximately February 2018, Plaintiff was employed by Defendant.

4. Pininfarina of America Corp. is a for profit corporation existing under the laws of the State of Florida. Defendant has had its principal place of business in Miami, Florida in Miami-Dade County. At all times pertinent hereto, Defendant has been engaged in an industry affecting commerce and has had 15 or more employees for

each working day in each of 20 or more calendar weeks in the current or preceding year. According to a press release, the company was merged into its parent company Pininfarina S.p.A. However, at all times Defendant was a wholly owned and managed entity of Pininfarina S.p.A. sharing the same upper management, email server, and resources.

5. At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

6. At all times material, Defendant was a "person" and an "employer" as defined by 29 U.S.C. §630; and Fla. Stat. § 760.02.

## JURISDICTION AND VENUE

7. This court has jurisdiction of the claim herein pursuant to 42 U.S.C.A. § 2000e-5(f)(3), 28 U.S.C.A. §§ 1331 and 1343(4). This civil action arises under the laws of the United States and the law of the State of Florida. Plaintiff is alleging a violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.

8. Venue herein is proper under 28 U.S.C.A. § 1391(b) and 42 U.S.C.A. § 2000e-5(f)(3). Defendant is a corporate resident of this state, doing business herein, and the unlawful employment practice of which Plaintiff is complaining was committed in Florida.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all conditions precedent in filing this action, to wit:
    a. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, Miami District Office;

b. Plaintiff was mailed a Right to Sue Notice as to her charges of discrimination; and

c. This complaint is being filed within 90 days of the receipt of that Right to Sue Notice.

10. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## **GENERAL ALLEGATIONS**

11. Plaintiff was hired in early 2017 as an employee of Defendant.

12. Almost immediately Plaintiff was introduced into a work atmosphere that treated female employees differently and negatively compared to the male employees.

13. The atmosphere was akin to an intimidating, hostile "boys club" approach that penalized female employees for speaking out and not being subservient to their male counterparts, by controlling, policing, and punishing women who might have challenged male dominance. This included double standards in terms of suggestions, treatment, and discipline. Specific instances will be detailed below.

14. Specifically, her managers Paolo Trevisan and Claudio da Soller made her experience with Defendant a constant crush of discrimination based on her sex, treating her negatively when she spoke up or made suggestions while encouraging male employees to act in those ways.

15. Defendant allowed this atmosphere to permeate all facets of its business, cementing both conscious and inherent bias within a hierarchically male-dominated organization. Women were unfairly left out of meetings and not included on trips and calls regarding their work or projects.

16. Ms. Micheletti was often belittled (or patronized) when she asked for help on things and ridiculed when she attempted to aid others. Specifically, when trying to help, Mr. da Soller told her to stick to cooking as that was the only practical help she could give. This type of conduct never happened to her male counterparts.

17. On November 15, 2017, Ms. Micheletti sent a team-wide email suggestion that they might use a program called Slack, a fairly widely used business messaging program. Mr. da Soller responded to her by chastising her and demanding that all suggestions must go through him first. He also told her that he took this as personal criticism of his own work. She responded by saying that this type of censorship and commentary is not given to male employees. His response was to give her career advice, suggesting that she be docile. This is all in stark contrast to statements made by the managers that the team act aggressively with ideas to be like "snipers" in capturing business. The email conversation ended with him agreeing to discuss her idea in the near future. This meeting never happened.

18. Finally, on February 2, 2018 Ms. Micheletti wrote an email to the president of the company, Paolo Pininfarina, objecting to the sex discrimination of the office. She framed the letter in a positive manner hoping to actually influence change in the office.

19. This letter was met negatively, calling it an unpleasant and difficult experience to even read. He refers her back to the very people she complained about to deal with her complaints. Her plight is ominously dismissed as he hopes her intent was "to generate improvement and not problems." He dismounts by saying management has his full respect, inferring that she and her complaint does not.

20. Ms. Micheletti was terminated just days later.

21. Shortly after the email exchange with the president of the company, Ms. Micheletti was called into a meeting with her managers, Mr. Trevisan and Mr. da Soller. In this meeting her goals for 2018 were discussed. Though implicitly changed from "goals", she was given more PR and marketing responsibilities. This was on top of her hard goals for sales targets. This additional responsibility was responsibility not given to any male members of the team. This would have the two-fold effect of negatively impacting her 2018 sales goals and overworking her to the point of quitting. In the meeting she was also threatened with termination should she refuse to accept, which, in fact, she was bullied into doing.

22. Oddly, despite this new set of goals for the full year, Ms. Micheletti was terminated about a week later.

23. In her termination letter, she was not given a reason for her dismissal. She was not given any progressive discipline leading up to the termination.

24. No investigation into her claims of sex discrimination were ever performed by Defendant.

25. If poor performance is given as the reason for her termination, it would be in contrast to how poor performance is handled with male employees. Male employees regularly miss sales goals and are not terminated. This includes male managers who miss yearly sales targets and continue their employment.

26. Further, Ms. Micheletti was not given sales goals initially. She was told that sales goals would be implemented after her first year. After being given sales goals following that first year of employment, in February 2018 she was apparently only given a single week to achieve them before her termination.

## **COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
## **SEX DISCRIMINATION**

27. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint.

28. Plaintiff is a woman and as such is a member of a group protected under Title VII from discrimination on the basis of sex.

29. At all times relevant, Defendant was considered employers under Title VII.

30. At all times relevant, Defendant employed over 15 individuals.

31. Throughout her employment, Plaintiff was the victim of sexual discrimination on the basis of her sex. Defendant allowed persistent and pervasive sex discrimination to occur within the workplace, refusing to stop the situations or address them at all, ultimately ending with Plaintiff's termination.

32. Plaintiff did not welcome the conduct described in paragraphs 14-26 and advised ownership and management of Defendant that such conduct was unwelcome, even offering productive suggestion on how to fix the situation.

33. Plaintiff was subjected to the discrimination because of her sex.

34. The discrimination adversely affected Plaintiff's psychological well-being.

35. The discrimination unreasonably interfered with Plaintiff's work performance, though not in the pretextual way described by Defendant.

36. The discrimination to which Plaintiff was subjected would affect the psychological well-being and unreasonably interfere with the work performance of a reasonable woman.

37. Sexual discrimination was sufficiently widespread, pervasive, and prevalent in Defendant's workplace at all times pertinent hereto to charge Defendant with constructive notice.
38. Plaintiff gave Defendant actual notice of sex discrimination on several occasions including a letter to the president of the company, Paolo Pininfarina, who promptly dismissed her claims seemingly as her fault and a nuisance.
39. Defendant failed to investigate Plaintiff's complaints.
40. Defendant failed to take adequate remedial action.
41. The discrimination continued to occur following Plaintiff's complaints and continued up to and through her termination.
42. Plaintiff sustained emotional suffering and injury attributable to the discrimination.
43. Plaintiff was out of work for several weeks due to her unlawful termination.
44. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff respectfully prays that this court:

A.     Issue an order enjoining Defendant to cease and desist from the conduct described in Count I of this Complaint and from discriminating against women in any manner whatsoever.

B.     Issue an order requiring Defendant to take steps to protect Plaintiff and other employees similarly situated from the type of conduct described in Count I of this Complaint, and from all other forms of discrimination in the future.

C.     Issue an order requiring Defendant to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and

adequate procedures for investigating complaints of sex discrimination and taking suitable remedial action.

D. Award Plaintiff front pay in lieu of reinstatement in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

E. Award Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

F. Award Plaintiff compensatory damages for her emotional suffering.

G. Award Plaintiff punitive damages.

H. Award Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

I. Award Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT II: SEX DISCRIMINATION
## FLORIDA CIVIL RIGHTS ACT § 760.10

45. Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint.

46. At all relevant times Defendant was an employer who employed more than 15 employees as required by Fla. Stat. § 760.02.

47. At all relevant times Defendant employed Plaintiff within the meaning of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et. seq.

48. Defendant acted in the above-mentioned manners with the intent to discriminate against Plaintiff on the basis of her sex.

49. Defendant disciplined and terminated Plaintiff following her reported sex discrimination rather than investigate the claims. Plaintiff had been repeatedly

discriminated against, eventually leading to employment retaliation following her continued complaints.

50. Plaintiff's sex was the legal cause for Defendant's decision to discipline and eventually terminate her employment.

51. Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her sex in violation of Fla. Stat. § 760.01 et. seq.

52. Plaintiff gave Defendant actual notice of sex discrimination on several occasions including a letter to the president of the company, Paolo Pininfarina, who promptly dismissed her claims seemingly as her fault and a nuisance.

53. This violation of the Florida Civil Rights Act of 1992 provides to Plaintiff back pay, reinstatement, attorneys' fees and costs, or any other equitable relief deemed just pursuant to Fla. Stat. § 760.11.

**WHEREFORE**, Plaintiff respectfully prays that this court:

A.  Issue an order enjoining Defendant to cease and desist from the conduct described in Count II of this Complaint and from harassing Plaintiff and other similarly situated in any manner whatsoever.

B.  Issue an order requiring Defendant to take steps to protect Plaintiff and other employees similarly situated from the type of conduct described in Count II of this Complaint, and from all other forms of discrimination in the future.

C.  Issue an order requiring Defendant to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of sexual harassment and taking suitable remedial action.

D.  Award Plaintiff front pay in lieu of reinstatement in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

E.  Award Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

F.  Award Plaintiff compensatory damages for her emotional suffering.

G.  Award Plaintiff punitive damages.

H.  Award Plaintiff attorneys' fees, including expert witness fees, pursuant to Fla. Stat 760.

I.  Award Plaintiff costs, interest, and such other relief as this Court may deem proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable as of right.

Dated this 10th day of June 2019.

Respectfully submitted,
By: __/s/ R. Edward Rosenberg
R. Edward Rosenberg, Esquire
Fla. Bar No.: 88231
Email: rer@sorondorosenberg.com
Sorondo Rosenberg Legal PA
1825 Ponce de Leon Blvd. #329
Coral Gables, FL 33134
T: 786.708.7550
F: 786.204.0844

Attorney for Plaintiff